UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JANE DOE,

Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE, a
Foreign Profit Corporation, and
ONESPAWORKD (BAHAMAS)
LTD.

Defendant.

_______________________________/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY**

Plaintiff, JANE DOE, hereby sues the Defendant, CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINE (hereinafter "CARNIVAL") and ONESPAWORLD (BAHAMAS) LTD (hereinafter "ONESPA") and files this Complaint for Damages and says:

**THE PARTIES AND JURISDICTION**

1. This is a maritime sexual assault and personal injury action wherein for damages exceed Seventy-Five Thousand Dollars and Zero Cents ($75,000) exclusive of interest, costs, and attorneys' fees.

2. **THE PLAINTIFF.** Plaintiff, JANE DOE (hereinafter "Plaintiff" or "DOE") is *sui juris*, is a citizen of the United States of America and a resident of, and domiciled in, Arizona.

3. **THE DEFENDANT.** Defendant, CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINE (hereinafter "Defendant" or "CARNIVAL"), is a foreign corporation with its principal place of business in Geneva, Switzerland, that operates and conducts business in

the United States. For federal jurisdictional purposes, CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINE, submits to the jurisdiction of this Court via the terms and conditions of the ticket contract.

4. ONESPA was and is a Florida company with its principal place of business located at 770 South Dixie Highway, Ste. 200, Coral Gables, FL 33126.

5. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.

6. **VENUE AND PERSONAL JURISDICTION.** This action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the CARNIVAL. CARNIVAL at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or had an office or agency in this state and/or county; and/or

b) Engaged in substantial activity within this state; and/or

c) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

7. ONESPA, at all times material hereto, personally or through an agent, in the District in which the Complaint is filed:

d) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or had an office or agency in this state and/or county; and/or

e) Engaged in substantial activity within this state; and/or

f) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

g) Federal jurisdiction is further granted due not only based on the ticket contract between Carnival and the Plaintiff, but also due to the diversity of the Parties herein.

8. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

9. On or about January 28, 2025, CARNIVAL owned and/or operated and/or managed and/or maintained and/or controlled as a common carrier a passenger cruise ship known as the *Carnival Valor* which included a spa/fitness center area known as Cloud 9.

10. CARNIVAL owed DOE the non-delegable duty to protect the passengers on the cruise ship, including DOE, from the intentional torts of its employees and/or crew members. Further, it owed "…a non-delegable duty to protect their passengers from crew member assaults and thereby safely transport their cruise passengers." *Doe v. Celebrity Cruises, Inc*., 394 F.3d 891, 913 (11th Cir. 2004).

11. On or about January 28, 2025, Cloud 9 was operated, managed and/or overseen by ONESPA, but would issue spa confirmations and receipts under the Carnival name and banner.

12. ONESPA was at all material times: under the direction and control of CARNIVAL; and/or acted as the agent or apparent agent of CARNIVAL; and/or was the employer of the individual who assaulted DOE, and who wore a CARNIVAL tag that said identified them by name and by their country of residence and origin, and who worked as a masseuse or spa assistant on the Carnival Valor on January 28, 2025 (hereinafter "Assailant").

13. ONESPA, as the onboard agent of CARNIVAL and/or that was under the direction and control of CARNIVAL and/or was the employer of Assailant, shared in the duty of absolute protection owed to passengers like DOE who traveled with the common carrier, CARNIVAL. *Doe v. Carnival*, et al., 472 F.Supp.3d 1187, 1192 (S.D. Fla. 2020) citing *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 913 (11th Cir. 2004).

14. At all times material Assailant was a borrowed servant of CARNIVAL and subject to the control and orders of the Carnival *Valor*'s Officers, including the Captain.

15. As such, CARNIVAL employed Assailant.

16. At all times material CARNIVAL's policies and procedures, as well as the *Carnival Valor*'s Captain's Rules, forbade crewmembers from any sexual contact with passengers.

17. Prior to being granted access to the *Valor* as an employee, agent, or apparent agent of CARNIVAL, the Assailant had to undergo a training program designed and implemented by CARNIVAL that trained the Assailant about CARNIVAL's policies and procedures.

18. Additionally, CARNIVAL maintains a zero-tolerance policy for sexual assault and violence, reserving the right to deny boarding to anyone convicted of such crimes. Under the Cruise Vessel Security and Safety Act (CVSSA), CARNIVAL adheres to strict, mandatory reporting of serious crimes, including sexual assault, to the FBI and U.S. Coast Guard.

19. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## ALLEGATIONS COMMON TO ALL COUNTS

1. **DATE OF THE INCIDENT.** The incident occurred on January 28, 2025.

2. **LOCATION OF THE INCIDENT.** The incident occurred onboard the vessel the *Carnival Valor*, a ship in navigable water, while DOE was a passenger onboard. Accordingly,

DOE's claims are governed by general maritime law. Specifically, the sexual assault of DOE occurred at CARNIVAL's spa, while the ship was in navigable waters.

3. **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, DOE was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel. DOE was a business invitee or guest of the spa, subject to the reservation for services DOE had made with the spa.

4. ***CARNIVAL VALOR SHIP* AND THE DANGEROUS CONDITION.** CARNIVAL owns and operates 29 cruise ships which include the *Carnival Valor.* Carnival had a duty to warn passengers, including the Plaintiff, about dangerous conditions aboard its ships, including within the spa facilities located onboard the Carnival Valor. As the operator of numerous cruise ships, Carnival is responsible for ensuring the safety of all areas accessible to passengers, such as spas. Carnival knew or should have known that certain risks, including the potential for abuse or harm within spa environment, were not open and obvious to passengers. Because these dangers are not readily apparent, Carnival was obligated to provide clear warnings and take reasonable steps to protect passengers from such hazardous conditions, including implementing and enforcing safety protocols and posting appropriate warnings in spa areas.

5. ***CARNIVAL VALOR SHIP* AND THE SPA.** As part of the services that Carnival offers while onboard the *Valor* include spa treatments at an onboard facility. While there is signage in the Spa that provides the name Cloud 9, Carnival provides passengers with written confirmation of spa appointments as the "SPA CARNIVAL," as can clearly be seen in the photograph attached below and incorporated herein:



Spa Carnival

[redacted] Room 6449

To avoid any delays with your treatment please check in for your appointment at least 15 minutes in advance

Tue 28-Jan 5:15 pm

Relaxation Package

Please give us 24 hours notice when canceling appointments or your on board account may be charged 50% of your treatment cost.

Redacted Carnival Spa confirmation.

6. Additionally, the receipt for services also refers to the spa generally as "Health Club / Beauty" with no branding for the third-party company that ran the spa, which would lead all guests to the conclusion that the spa was owned, possessed, and run by CARNIVAL.

Carnival Cruise Line
Carnival Valor
Health Club / Beauty

01/28/2025 06:45:03 PM
Name [redacted]

Check # 641796
ST RM 6449
Folio 40944

SRVR [redacted]

| | |
|---|---|
| 1 Instant Refreshing Gel 150ML (NEW) | $ 69.00 |
| 1 Cellutox Body Oil 100ml | $ 69.00 |
| Discount Total | $ 0.00 |
| Shipping | $ 0.00 |
| Subtotal | $ 138.00 |
| Sale | $ 138.00 |

Add. Gratuity $ ______

[redacted]

Folio $ 138.00

ignature ______

Thank You - Gracias
Merci - Danke Schoen
Grazie - Obrigado

Service Provided by OneSpaWorld
www.timetospa.com

Redacted receipt for spa treatment.

7. **DESCRIPTION OF THE INCIDENT.** At approximately 6:45 p.m. on January 28, 2025, while onboard the vessel, DOE attended a massage at the ship's spa. During the course of the massage, DOE was subjected to inappropriate and unwanted physical contact of a sexual nature by the massage therapist.

8. **DAMAGES**. As a result of this conduct, DOE experienced significant emotional distress, including the resurfacing of prior trauma, and has since suffered from anxiety, panic attacks, and difficulty sleeping. DOE has suffered these losses in the past and will continue to suffer them in the future. These injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. These injuries and damages also include but are not limited to noneconomic damages in the past and in the future including suffering, disability, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

9. **NOTICE: PRIOR SIMILAR INCIDENTS.** Prior similar incidents show evidence that CARNIVAL had notice of the dangerous condition here. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; logs or databases of prior similar incidents of abuse; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

10. In the past ten (10) years, CARNIVAL has investigated hundreds of sexual assault/rape allegations.

11. Pursuant to CARNIVAL's own policies and procedures, CARNIVAL was supposed to connect DOE immediately with a member of the onboard CARE team to assist her with post-assault procedures and to limit her trauma.

12. CARNIVAL failed to immediately connect DOE with a member of the onboard CARE team.

13. Pursuant to CARNIVAL's own policies and procedures, CARNIVAL was supposed to take DOE to the medical center for treatment. Instead, CARNIVAL sent security officers to DOE for a statement.

14. The Assailant's assault on DOE was intentional, willful, wanton, outrageous, and in reckless disregard and indifference of DOE's rights.

15. Moreover, Assailant's acts were calculated. They took advantage of the ship's

failure to have meaningful procedures to protect their client's from assault while secluded in the massage room(s).

16. Assailant, during the course and scope of his employment with ONESPA on CARNIVAL's cruise ship, violated DOE's person, integrity, health, safety, and well-being.

17. Following the sexual assault, CARNIVAL refused to provide DOE with the name of Assailant and failed to isolate the Assailant away from other guests and crewmember.

18. Following the sexual assault, in violation of their own policies and procedures, CARNIVAL refused to provide DOE with a copy of their medical records.

19. **THESE ACTIONS ARE A BASIS FOR PUNITIVE DAMAGES.** These actions by Assailant, CARNIVAL and ONESPAWORLD's crewmember/employee, for which Defendants are vicariously liable, display wanton, willful and outrageous conduct and form a basis for punitive damages against CARNIVAL and ONESPAWORLD under the General Maritime Law. *Hall v. Carnival Corporation*, 536 F.Supp.3d 1306 (S.D. Fla. 2021); *Amparo v. Classica Cruise Operator Ltd*., 20-CV-60896-RAR, 2021 WL 4989916 (S.D. Fla. 2021).

20. **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN REGARD TO SEXUAL ASSAULT.** The general maritime law, state and federal, imposes a strict liability on the common carrier, including the cruise line herein, for sexual assault, sexual battery and rape. This is a "special non-delegable duty owed by the carrier to the passenger". *Doe v. Celebrity Cruises, Inc*., 394 F. 3d 891, 907 (11th Circuit 2004); *New Orleans and N.E.R. Co. v. Jopes*, 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891); *New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); thus, the cruise line has an "unconditional responsibility" for its employee's misconduct. *Tullis v. Fidelity and Casualty Company of New York*, 397 F. 2d 22, 23 (5th Cir. 1968) as cited by the 11th Circuit in *Doe v. Celebrity Cruises Inc.*, 394 F. 3d at 909. Stated otherwise, "it is a widely adopted rule that common carriers owe such an absolute duty to their passengers". *Morton v. De Oliveira*, 984 F. 2d 289, 291-92 (9th Cir. 1993) as cited in *Doe v. Celebrity Cruises Inc*. 394 F. 3d at 911. See, *Nadeau v. Costley*, 634 S. 2d 649, *652-3 (Fla. 3d DCA 1994) and Commodore Cruise Line, Ltd. v. Kormendi, 344 S. 2d 896 (Fla. 3d DCA 1977).*

21. **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.** The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 888 So.2d 654 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances". See, *Harnesk vs. Celebrity Cruise Lines, Inc,* 1992 AMC 1472, 1991 WL 329584 (S.D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited, S.A.*, 475 So.2d 248 (Fla. 3d DCA 1985).

22. The cruise line voluntarily assumed or voluntarily undertook responsibility to provide safety and security and reasonably safe and well-trained employees for its passengers, and thus created a duty to provide these services with reasonable care under the circumstances. See, e.g., *Goldberg v. Florida Power and Light Company*, 899 So.2d 1105 (Fla. 2005); *Kerfoot v. Waychof*, 501 So.2d 588 (Fla. 1987); *Horton v. Freeman*, 943 So.2d 1016 (Fla. 4th DCA 2006); *Estate of Sharp v. Omnicare, Inc.*, 879 So. 2d 34 (Fla. 5th DCA 2004); and *Roos v. Morrison*, 913 So.2d 59 (Fla. 1st DCA 2005).

23. **NOTICE: POLICY AND PROCEDURES AND TRAININGS.** Additional evidence that Carnival had notice of the dangerous condition is shown by the fact that Carnival has, for years, created and implemented written policies, procedures, and training programs addressing the proper treatment of passengers. Carnival's written documents instruct crew members on standards of conduct and emphasize the importance of maintaining a safe and respectful environment for all guests. These policies require crew members to adhere to professional boundaries and to treat passengers with dignity and care at all times. Carnival trains its crew to recognize, prevent, and respond appropriately to any conduct that could endanger or harm passengers, and maintains a zero-tolerance policy for sexual contact of any kind between a passenger and crewmember. The existence of these policies and procedures demonstrates that Carnival was aware of the need to protect passengers from inappropriate or unsafe conduct and had notice of the potential for such dangerous conditions to arise.

## COUNT I - PREMISES LIABILITY AGAINST CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE

1. Plaintiff, JANE DOE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 23, above.

2. At said time and place, Defendant CARNIVAL owed a non-delegable duty to its members, invitees and to the public to keep the premises reasonably safe, and to warn about dangerous conditions that the Defendant knew, or should have known about, that existed at the premises located *Carnival Valor*, including structures thereon, and to keep and maintain the premises in a condition reasonably safe for use by its members, invitees and the public. As more fully set forth above, the Defendant CARNIVAL acted intentionally and/or recklessly through their agents towards the Plaintiff.

3. In particular, Defendant CARNIVAL had a duty to take such precautions as were reasonably necessary to protect its members, invitees, invited licensees and the public, including the Plaintiff, from reasonably foreseeable criminal attacks.

4. On or about January 28, 2025, DOE and the masseuse entered the massage room for a scheduled session at the Health Club / Beauty spa onboard the vessel. DOE lied on their stomach on the massage table when the masseuse pulled DOE's undergarments down over half of DOE's buttocks to massage the back. The masseuse proceeded to massage DOE's upper shoulders and back, moving DOE's left arm and placing the masseuse's hand between DOE's arm and side. The masseuse used their right arm and hand to massage DOE's back and repeatedly moved their left hand and fingers so that they were under DOE's left breast, contacting DOE's breasts. While DOE was positioned for a head, face, and neck massage, the Assailant continued to move the sheet covering DOE's chest, requiring DOE to continually adjust it back to re-cover her exposed breasts. The masseuse was able to see DOE's breasts and massaged DOE's upper chest down to the tops of the breasts, including the area of the breast close to the nipples. The masseuse then placed a rolled-up towel over DOE's breasts, pulled the sheet down to DOE's waist, applied oil to DOE's stomach, and massaged the entire stomach down to DOE's pelvic area. DOE became frozen and

traumatized during the incident, experiencing a resurfacing of prior abuse and feeling unable to move or speak.

5. Defendant CARNIVAL through its agents and/or employees, negligently failed to devise and set procedures governing the inspection, supervision and/or security of where the subject incident occurred, or in the alternative;

6. On or about January 28, 2025, Defendant CARNIVAL, its agents, and/or employees were negligent and breached their duty of reasonable care for the safety and protection of the Plaintiff in a variety of ways including but not limited to the following:

a) Failing to provide adequate security for its members, invitees, and the public, including the Plaintiff;
b) Failing to police, patrol, guard, deter, and/or otherwise provide adequate protection for its members, invitees, and the public, when Defendant knew, or in the exercise of reasonable care should have known, of reasonably foreseeable third-party criminal acts;
c) Failing to have sufficient number of guards in visible areas to deter crime, thereby protecting its members, invitees, and the public, including the Plaintiff, from foreseeable criminal acts;
d) Failing to have an adequate number of security guards to protect its members, invitees, and the public, including the Plaintiff;
e) Failing to implement adequate security policies, measures, and/or procedures necessary to protect including the Plaintiff, and other members, invitees, and the public, from foreseeable criminal acts;
f) Failing to hire and/or retain competent security guards to protect its members, invitees, and the public, including the Plaintiff; and
g) Failing to provide an overall security plan that met known industry standards and customs fit for safety in the community.

7. At all material times, Defendant CARNIVAL through its agents and/or employees, negligently failed to hire persons, employees, and/or agents reasonably suited to provide, implement, and maintain adequate security measures to ensure the safety of its members, invitees, and the public, including where the subject incident occurred.

8. Defendant CARNIVAL through its agents and/or employees created and/or allowed said dangerous conditions on the premises. Further Defendant CARNIVAL failed to warn its

members, invitees, and the public, including the Plaintiff, of the existence of said dangerous conditions; or in the alternative, allowed said dangerous conditions to exist for a length of time sufficient in which a reasonable inspection would have disclosed the same.

9. As a direct and proximate result of the Defendant CARNIVAL's negligence, the Plaintiff was sexually assaulted by its employee.

10. The Defendant CARNIVAL owed a duty of care to the Plaintiffs as she was lawfully within the premises.

11. The Defendant CARNIVAL was in actual or constructive control of the agents and/or employees and the premises on which the tort was committed.

12. The Defendant, CARNIVAL, as Owner of the Health Club / Beauty spa owed a duty to the Plaintiff, (and all others lawfully present at the spa) to maintain reasonably safe atmosphere away from physical injury.

13. The Defendant CARNIVAL breached this duty in the following ways:

a) Failing to provide adequately trained security personnel that would engage in behavior that would prevent danger to those lawfully present;
b) Failing to provide adequate physical structure to ensure the safety and security of its guests and residents;
c) Failing to respond to, correct, or enact policies and procedures to deal with prior incidents of jumping over the locked gate where the trespasser gained entry;
d) Failing to respond to, correct, or enact policies and procedures to deal with prior incidents of individual entering the Health Club / Beauty spa and gaining access to the grounds without using any of the locked gates or entries around the property;
e) Negligently hiring, retaining or supervising the Security;
f) Negligently hiring, retaining, and/or supervising the Security personnel.

14. The Defendant CARNIVAL's breaches were the proximate cause of the Plaintiff's injuries.

WHEREFORE, the Plaintiff, JANE DOE, demands judgment against the Defendant CARNIVAL for damages, interest, costs and any further relief to which the Plaintiff is entitled under the applicable law and further demands trial by jury of all issues triable as of right by jury.

**COUNT II - NEGLIGENT HIRING/RETENTION/SUPERVISION/TRAINING CLAIM CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE**

15. Plaintiff, JANE DOE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 17, above.

16. Defendant CARNIVAL owes a legal duty to hire and retain as employees only those fit for service, to supervise its employees, and to provide necessary and appropriate discipline, training, and retraining to its employees. Defendant CARNIVAL markets itself as a safe and reliable cruise line for all its guests. Defendant CARNIVAL knows that its employees will frequently be alone with guests. Defendant CARNIVAL owes a duty to all guests, including JANE DOE, to properly screen, investigate, and/or vet its employees, before hiring them and during their employment, to ensure that they will not pose a danger to its guests, such as sexual assaulting, abusing, harassing, battering, or harming the passenger. Defendant CARNIVAL also owes a duty to its guests to exercise reasonable care in hiring, retaining, supervising and training its employees to protect guests from foreseeable criminal attacks and other harm.

17. Defendant CARNIVAL became aware, or should have become aware, of problems with the employee that would indicate her unfitness before hiring her and during her employment with Defendant CARNIVAL. The red-flags and/or problems including, but are not limited to past criminal offenses, incidents or allegations of sexual misconduct, and other complaints.

18. The masseuse was incompetent and/or unfit to perform the type of work that she was hired, retained and/or employed to perform for Defendant CARNIVAL for a multitude of reasons, including but not limited to her bad conduct and/or complaints that indicated that she

posed a threat to guests. Defendant CARNIVAL knew or reasonably should have known of the masseuse's unfitness, incompetence, criminal history, and/or the danger that she posed to guests, including the Plaintiff. As a direct result of hiring, retaining, employing this masseuse, Plaintiff was sexually assaulted, abused, and otherwise injured by the masseuse.

19. The Defendant CARNIVAL, breached its legal duties by:

a) Negligently hiring the masseuse when it knew or should have known that she was unfit and unqualified for employment;
b) Negligently hiring the masseuse when it knew or should have known that she had dangerous propensities that presented a foreseeable risk of harm or criminal attacks upon guest, like the Plaintiff;
c) Failing to perform an appropriate background check and investigation prior to hiring her and while retaining her;
d) Failing to properly supervise and train this masseuse;
e) Failing to take further action, such as investigation, discharge, or reassignment, once Defendant EDEN ROC MANAGEMENT LLC became aware of the masseuse's misconduct during employment;
f) Failing to protect the Plaintiff from being sexually assaulted, harassed, touched, groped, battered, violated or preyed upon by its masseuse;
g) Failing to intervene when it should have been obvious that the Plaintiff was in need of help and/or that its masseuse was acting suspiciously;
h) Failing to adequately investigate complaints against the masseuse, including allegations of sexual abuse;
i) Failing to adopt and enforce adequate policies and procedures for the retaining, supervision, training, and investigation of its massage therapists.
j) Failing to adopt and enforce adequate policies and procedures for the retention of its massage therapists.
k) Failing to comply with applicable industry safety standards for the hiring of its massage therapists.
l) Failing to comply with applicable industry safety standards for the hiring, retention, supervision and training of its massage therapists;
m) Failing to ensure that its massage therapists and employees were adequately monitored and supervised;
n) Failing to terminate the masseuse when it learned, or should have learned that she was unfit, unqualified for employment and that her dangerous propensities that rendered her a foreseeable risk of harp to vulnerable guests, like the Plaintiff.
o) Failing to adopt and appropriate system for logging and reviewing complaints about its massage therapists.
p) Failing to take reasonable measures to prevent the employment and retention of unfit and unqualified massage therapists; and
q) All other negligent acts and/or omissions learned in discovery.

20. The Plaintiff fell within the zone of foreseeable risk created by the Defendant's employment and continued employment with CARNIVAL.

21. As direct and proximate result of Defendant CARNIVAL's negligence, including its hiring, supervision, retention, and training of the masseuse, Plaintiff was sexually assaulted and subjected to permanent injuries. Plaintiff has suffered grievously, suffered bodily injury and resulting pain and suffering, inconvenience, expense of medical treatment, disability, mental anguish, loss of capacity of the enjoyment of life, and medical care and treatment in the past and future, loss of earnings, loss of ability to earn money, and the injury resulted in and aggravation of an existing injury. The losses are permanent and continuing and the Plaintiff will continue to suffer losses in the future.

**COUNT III - PREMISES LIABILITY AGAINST ONESPA CORPORATION d/b/a ONESPA CRUISE LINE**

22. Plaintiff, JANE DOE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 23, above.

23. At said time and place, Defendant ONESPA owed a non-delegable duty to its members, invitees and to the public to keep the premises reasonably safe, and to warn about dangerous conditions that the Defendant knew, or should have known about, that existed at the premises located *ONESPA Valor*, including structures thereon, and to keep and maintain the premises in a condition reasonably safe for use by its members, invitees and the public. As more fully set forth above, the Defendant ONESPA acted intentionally and/or recklessly through their agents towards the Plaintiff.

24. In particular, Defendant ONESPA had a duty to take such precautions as were reasonably necessary to protect its members, invitees, invited licensees and the public, including the Plaintiff, from reasonably foreseeable criminal attacks.

25. On or about January 28, 2025, DOE and the masseuse entered the massage room for a scheduled session at the Health Club / Beauty spa onboard the vessel. DOE lied on their stomach on the massage table when the masseuse pulled DOE's undergarments down over half of DOE's buttocks to massage the back. The masseuse proceeded to massage DOE's upper shoulders and back, moving DOE's left arm and placing the masseuse's hand between DOE's arm and side. The masseuse used their right arm and hand to massage DOE's back and repeatedly moved their left hand and fingers so that they were under DOE's left breast, making contact with DOE's breasts. While DOE was positioned for a head, face, and neck massage, the Assailant continued to move the sheet covering DOE's chest, requiring DOE to continually adjust it back to re-cover her exposed breasts. The masseuse was able to see DOE's breasts and massaged DOE's upper chest down to the tops of the breasts, including the area of the breast close to the nipples. The masseuse then placed a rolled-up towel over DOE's breasts, pulled the sheet down to DOE's waist, applied oil to DOE's stomach, and massaged the entire stomach down to DOE's pelvic area. DOE became frozen and traumatized during the incident, experiencing a resurfacing of prior abuse and feeling unable to move or speak.

26. Defendant ONESPA through its agents and/or employees, negligently failed to devise and set procedures governing the inspection, supervision and/or security of where the subject incident occurred, or in the alternative;

27. On or about January 28, 2025, Defendant ONESPA, its agents, and/or employees were negligent and breached their duty of reasonable care for the safety and protection of the Plaintiff in a variety of ways including but not limited to the following:

a) Failing to provide adequate security for its members, invitees, and the public, including the Plaintiff;
b) Failing to police, patrol, guard, deter, and/or otherwise provide adequate protection for its members, invitees, and the public, when Defendant knew, or in the exercise of reasonable care should have known, of reasonably foreseeable third-party criminal acts;
c) Failing to have sufficient number of guards in visible areas to deter crime, thereby protecting its members, invitees, and the public, including the Plaintiff, from foreseeable criminal acts;
d) Failing to have an adequate number of security guards to protect its members, invitees, and the public, including the Plaintiff;
e) Failing to implement adequate security policies, measures, and/or procedures necessary to protect including the Plaintiff, and other members, invitees, and the public, from foreseeable criminal acts;
f) Failing to hire and/or retain competent security guards to protect its members, invitees, and the public, including the Plaintiff; and
g) Failing to provide an overall security plan that met known industry standards and customs fit for safety in the community.

28. At all material times, Defendant ONESPA through its agents and/or employees, negligently failed to hire persons, employees, and/or agents reasonably suited to provide, implement, and maintain adequate security measures to ensure the safety of its members, invitees, and the public, including where the subject incident occurred.

29. Defendant ONESPA through its agents and/or employees created and/or allowed said dangerous conditions on the premises. Further Defendant ONESPA failed to warn its members, invitees, and the public, including the Plaintiff, of the existence of said dangerous conditions; or in the alternative, allowed said dangerous conditions to exist for a length of time sufficient in which a reasonable inspection would have disclosed the same.

30. As a direct and proximate result of the Defendant ONESPA's negligence, the Plaintiff was sexually assaulted by its employee.

31. The Defendant ONESPA owed a duty of care to the Plaintiffs as she was lawfully within the premises.

32. The Defendant ONESPA was in actual or constructive control of the agents and/or employees and the premises on which the tort was committed.

33. The Defendant, ONESPA, as Owner of the Health Club / Beauty spa owed a duty to the Plaintiff, (and all others lawfully present at the spa) to maintain reasonably safe atmosphere away from physical injury.

34. The Defendant ONESPA breached this duty in the following ways:

a) Failing to provide adequately trained security personnel that would engage in behavior that would prevent danger to those lawfully present;
b) Failing to provide adequate physical structure to ensure the safety and security of its guests and residents;
c) Failing to respond to, correct, or enact policies and procedures to deal with prior incidents of jumping over the locked gate where the trespasser gained entry;
d) Failing to respond to, correct, or enact policies and procedures to deal with prior incidents of individual entering the Health Club / Beauty spa and gaining access to the grounds without using any of the locked gates or entries around the property;
e) Negligently hiring, retaining or supervising the Security;
f) Negligently hiring, retaining, and/or supervising the Security personnel.

35. The Defendant ONESPA's breaches were the proximate cause of the Plaintiff's injuries.

WHEREFORE, the Plaintiff, JANE DOE, demands judgment against the Defendant ONESPA for damages, interest, costs and any further relief to which the Plaintiff is entitled under the applicable law and further demands trial by jury of all issues triable as of right by jury.

**COUNT IV - NEGLIGENT HIRING/RETENTION/SUPERVISION/ TRAINING CLAIM ONESPA**

36. Plaintiff, JANE DOE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 17, above.

37. Defendant ONESPA owes a legal duty to hire and retain as employees only those fit for service, to supervise its employees, and to provide necessary and appropriate discipline, training, and retraining to its employees. Defendant ONESPA markets itself as a safe and reliable cruise line for all its guests. Defendant ONESPA knows that its employees will frequently be alone with guests. Defendant ONESPA owes a duty to all guests, including JANE DOE, to properly screen, investigate, and/or vet its employees, before hiring them and during their employment, to ensure that they will not pose a danger to its guests, such as sexual assaulting, abusing, harassing, battering, or harming the passenger. Defendant ONESPA also owes a duty to its guests to exercise reasonable care in hiring, retaining, supervising and training its employees to protect guests from foreseeable criminal attacks and other harm.

38. Defendant ONESPA became aware, or should have become aware, of problems with the employee that would indicate her unfitness before hiring her and during her employment with Defendant ONESPA. The red-flags and/or problems including, but are not limited to past criminal offenses, incidents or allegations of sexual misconduct, and other complaints.

39. The masseuse was incompetent and/or unfit to perform the type of work that she was hired, retained and/or employed to perform for Defendant ONESPA for a multitude of reasons, including but not limited to her bad conduct and/or complaints that indicated that she posed a threat to guests. Defendant ONESPA knew or reasonably should have known of the masseuse's unfitness, incompetence, criminal history, and/or the danger that she posed to guests, including the Plaintiff. As a direct result of hiring, retaining, employing this masseuse, Plaintiff was sexually assaulted, abused, and otherwise injured by the masseuse.

40. The Defendant ONESPA, breached its legal duties by:

a) Negligently hiring the masseuse when it knew or should have known that she was unfit and unqualified for employment;
b) Negligently hiring the masseuse when it knew or should have known that she had dangerous propensities that presented a foreseeable risk of harm or criminal attacks upon guest, like the Plaintiff;
c) Failing to perform an appropriate background check and investigation prior to hiring her and while retaining her;
d) Failing to properly supervise and train this masseuse;
e) Failing to take further action, such as investigation, discharge, or reassignment, once Defendant ONESPA became aware of the masseuse's misconduct during employment;
f) Failing to protect the Plaintiff from being sexually assaulted, harassed, touched, groped, battered, violated or preyed upon by its masseuse;
g) Failing to intervene when it should have been obvious that the Plaintiff was in need of help and/or that its masseuse was acting suspiciously;
h) Failing to adequately investigate complaints against the masseuse, including allegations of sexual abuse;
i) Failing to adopt and enforce adequate policies and procedures for the retaining, supervision, training, and investigation of its massage therapists.
j) Failing to adopt and enforce adequate policies and procedures for the retention of its massage therapists.
k) Failing to comply with applicable industry safety standards for the hiring of its massage therapists.
l) Failing to comply with applicable industry safety standards for the hiring, retention, supervision and training of its massage therapists;
m) Failing to ensure that its massage therapists and employees were adequately monitored and supervised;
n) Failing to terminate the masseuse when it learned, or should have learned that she was unfit, unqualified for employment and that her dangerous propensities that rendered her a foreseeable risk of harp to vulnerable guests, like the Plaintiff.
o) Failing to adopt and appropriate system for logging and reviewing complaints about its massage therapists.
p) Failing to take reasonable measures to prevent the employment and retention of unfit and unqualified massage therapists; and
q) All other negligent acts and/or omissions learned in discovery.

41. The Plaintiff fell within the zone of foreseeable risk created by the Defendant's employment and continued employment with ONESPA.

42. As direct and proximate result of Defendant ONESPA's negligence, including its hiring, supervision, retention, and training of the masseuse, Plaintiff was sexually assaulted and

subjected to permanent injuries. Plaintiff has suffered grievously, suffered bodily injury and resulting pain and suffering, inconvenience, expense of medical treatment, disability, mental anguish, loss of capacity of the enjoyment of life, and medical care and treatment in the past and future, loss of earnings, loss of ability to earn money, and the injury resulted in and aggravation of an existing injury. The losses are permanent and continuing and the Plaintiff will continue to suffer losses in the future.

## COUNT V - VICARIOUS LIABILITY OF CARNIVAL FOR SEXUAL ASSAULT OF PASSENGER BY CREWMEMBER

43. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 42, above.

44. On January 28, 2025, CARNIVAL’s employee/crewmember committed the intentional acts of sexual assault.

45. Assailant’s actions were willful, intentional, wanton, outrageous, and in reckless disregard and indifference for the rights of others and for the safety and security of its passengers, including DOE herein, and therefore are a basis for punitive damages against ONESPA under the Restatement (Second) of Torts 909 and under the General Maritime Law.

46. CARNIVAL and Assailant made it clear that he was an employee/crewmember. Assailant was wearing a Carnival badge, detailing his name and nationality. CARNIVAL gave him gave him unfettered access to the fitness center and controlled his schedule. Hence, based on this information Plaintiffs’ information and belief is that Assailant held a position onboard the Carnival *Valor*.

47. Assailant’s actions were willful, intentional, wanton, outrageous, and in reckless

disregard and indifference for the rights of others and for the safety and security of its passengers, including DOE herein, and therefore are a basis for punitive damages against CARNIVAL under the Restatement (Second) of Torts 909 and under the General Maritime Law.

48. CARNIVAL is vicariously liable and responsible for the criminal acts of its crewmember and/or employee under *respondeat superior* and under the strict liability of the cruise line for the criminal, wrongful, and violent actions of its onboard crew.

49. Assailant's outrageous conduct committed onboard the ship, and in the course and scope of his employment, are attributable to CARNIVAL, have caused DOE to suffer damages, past and future, including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. DOE has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by DOE including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; noneconomic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the

incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

**COUNT VI - VICARIOUS LIABILITY OF ONESPA FOR SEXUAL ASSAULT OF PASSENGER BY CREWMEMBER**

50. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 49, above.

51. On January 28, 2025, ONESPA's employee committed the intentional acts of sexual assault.

52. Assailant's actions were willful, intentional, wanton, outrageous, and in reckless disregard and indifference for the rights of others and for the safety and security of its passengers, including DOE herein, and therefore are a basis for punitive damages against ONESPA under the Restatement (Second) of Torts 909 and under the General Maritime Law.

53. ONESPA is vicariously liable and responsible for the criminal acts of its employee under respondeat superior and under the strict liability of the employer for the criminal, wrongful, and violent actions of its employee.

54. Assailant's outrageous conduct committed onboard the ship, and in the course and scope of his employment, are attributable to ONESPA, have caused DOE to suffer damages, past and future, including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. DOE has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiffs demand judgment against ONESPA for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by DOE including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; noneconomic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

**COUNT VII - VICARIOUS LIABILITY OF CARNIVAL: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OF PASSENGER BY CREWMEMBER**

55. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 54, above.

56. This is an action for intentional infliction of emotional distress of a passenger by a crewmember. The conduct of the perpetrator here was extreme and outrageous. The perpetrator intended to inflict emotional distress or was reckless in his actions. The intentional or reckless actions of the perpetrator in fact did inflict on the Plaintiff extreme emotional distress.

57. The actions of the CARNIVAL crew and/or employee were unlawful and in violation of criminal statutes in the United States.

58. CARNIVAL is liable and responsible for the intentional infliction of emotional distress of the perpetrator under *respondeat superior* and under the strict liability of the cruise line for the criminal, wrongful, and/or violent actions of its onboard crew.

59. As a result of the intentional infliction of emotional distress, DOE has suffered damages and injuries including but not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by DOE including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

**COUNT VIII - VICARIOUS LIABILITY OF ONESPA: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OF PASSENGER BY CREWMEMBER**

60. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 59, above.

61. This is an action for intentional infliction of emotional distress of a passenger by a crewmember/employee. The conduct of the perpetrator here was extreme and outrageous. The

perpetrator intended to inflict emotional distress or was reckless in his actions. The intentional or reckless actions of the perpetrator in fact did inflict on the Plaintiff extreme emotional distress.

62. The actions of the ONESPA crewmember and/or employee were unlawful and in violation of criminal statutes in the United States.

63. At all times material hereto, the crewmember/employee that sexually assaulted DOE was hired and/or retained by, as well as in the employ of, ONESPA, for service as a crewmember during said voyage.

64. ONESPA is liable and responsible for the intentional infliction of emotional distress of the perpetrator under *respondeat superior* and under the strict liability of the maritime employer for the criminal, wrongful, and/or violent actions of its onboard crew.

65. As a result of the intentional infliction of emotional distress, DOE has suffered damages and injuries including but not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against ONESPA for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by DOE including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-

economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

**COUNT XI - DIRECT LIABILITY OF CARNIVAL: NEGLIGENT PROCEDURES AND OPERATIONS**

66. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 65, above.

67. This is an action for negligent procedures and operations. CARNIVAL owes to its passengers a duty to use reasonable care under the circumstances, including to the Plaintiff DOE.

68. CARNIVAL knew or in the exercise of reasonable care should have known that onboard its cruise ships there have been numerous assaults, batteries, sexual assaults and batteries, rapes, and attacks perpetrated by crew on passengers.

69. Given the circumstances of the job itself, and the conduct of the crew onboard the ships—more fully described herein— assault, battery, and sexual assault and battery by crew members is an ongoing and repetitive problem and therefore foreseeable to take place in any place to which the crew has access without surveillance cameras, which in this case is the second floor of the spa/ fitness center of the ship.

70. The circumstances under which CARNIVAL's duty exists include that it operates a ship that functions like a hotel, offering rooms where people can sleep, dress, and go about their private affairs.

71. The circumstances also include that CARNIVAL voluntarily undertakes to market to families with children and represents to the public that its cruise ships are appropriate for

families. They include that CARNIVAL also provides facilities and functions for families with children, including teen programs and activities onboard and thus reassure the parents of children and teens that the ship is safe for these groups. They include that CARNIVAL takes people onboard its ships to isolated environment not connected to land. And they include that there is no governmental police force onboard any of the cruise ships, meaning that crewmembers who break the law are fully aware that they will receive no immediate legal consequences.

72. CARNIVAL's duty owed to its passengers, including DOE, is non-delegable and even the slightest negligence renders a carrier liable.

73. CARNIVAL breached its duty to exercise reasonable care under the circumstances in relation to security for and of its passengers, by its actions and conduct, including but not limited to the following:

a. Failing to provide adequate security for its passengers, including DOE;

b. Failing to have reasonable and proper methods of preventing crime;

c. Failing to have an adequate system in effect to prevent passengers from being sexually assaulted by crewmembers aboard Carnival *Valor*;

d. Failing to implement reasonable and adequate safety and security policies, measures, and procedures necessary to protect and keep safe the passengers on the Carnival *Valor*.

e. Failing to prevent crewmembers from committing sexual assault, sexual battery, and sexual abuse on its passengers onboard the Carnival *Valor*, including the Plaintiff herein;

f. Failing to hire experienced security personnel;

g. Failing to provide an adequate number of security personnel aboard the Carnival *Valor* despite being notified on numerous occasions by its own security leadership that there is not an adequate amount of security officers on CARNIVAL's ships;

h. Failing to perform adequate security checks of the premises;

i. Failing to ensure the Carnival *Valor* had the same video surveillance as other ships that were in use in other parts of the world;

j. Failing to equip the Carnival *Valor* with video and security monitoring of areas where passengers have been and will be assaulted or battered;

k. Failing to install additional surveillance video cameras on the Carnival *Valor* after it learned of other sexual attacks on CARNIVAL ships that were seemingly purposely inflicted in public areas of CARNIVAL ships that did not have video surveillance to record the sexual attacks;

l. Failing to have adequate video surveillance in all areas of the fitness center to deter crewmembers from sexually assaulting passengers on the second floor of the fitness center of the Carnival *Valor*;

m. Failing to have a security team member dedicated to monitoring surveillance video cameras;

n. Failing to make it known to all crewmembers that there is a dedicated security team member monitoring the surveillance cameras;

o. Failing to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents.

p. Failing to retain experts to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents;

q. Failing to implement reasonable and proper procedures for the safety and security of the passengers onboard the ship including but not limited to security policies and procedures commensurate with the type of business conducted therein, namely an isolated party ship where passengers have a reasonable and justifiable expectation of feeling safe in all areas accessible to the public on the ship;

r. Failing to adequately manage the spa and fitness center aboard the vessel;

s. Failing to intervene and stop the rape and sexual assault once it began;

t. Failing to get a CARE team member to assist DOE immediately after being notified of the sexual assault;

u. Failing to get treatment for DOE right away;

v. Failing to consider DOE's well-being by having her describe to security members what occurred, prior to offering her a CARE team member or taking her to the medical center; and/or;

w. Failing to consider DOE's well-being by recording her whilst she told male security members what occurred, without asking her if she was agreeable to being recorded.

74. CARNIVAL by its negligent procedures and operations proximately caused and allowed this rape and the injuries and damages suffered by DOE. The injuries and damages

suffered by DOE as a result of the negligence of the Defendant include but are not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and noneconomic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by DOE including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

## COUNT X - DIRECT LIABILITY OF CARNIVAL: NEGLIGENT FAILURE TO WARN

75. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 74, above.

76. This is an action for negligent failure to warn. CARNIVAL owes to its passengers a duty to use reasonable care under the circumstances, including to the Plaintiff DOE.

77. CARNIVAL knew or in the exercise of reasonable care should have known that onboard its cruise ships there have been numerous assaults, batteries, sexual assaults and batteries, rapes, and attacks perpetrated by crew on passengers. Given the circumstances of the job itself, and the conduct of the crew onboard the ships—more fully described herein— assault, battery, and sexual assault and battery by crew members is an ongoing and repetitive problem and therefore foreseeable to take place in any place to which the crew has access without surveillance cameras, which in this case is the spa center of the ship.

78. The circumstances under which CARNIVAL's duty exists include that it operates a ship that functions like a hotel, offering rooms where people can sleep, dress, and go about their private affairs.

79. The circumstances also include that CARNIVAL voluntarily undertakes to market to women onboard with children and represents to the public that its cruise ships are appropriate for women to receive spa treatments. They include that CARNIVAL takes people onboard its ships to isolated environment not connected to land. And they include that there is no governmental police force onboard any of the cruise ships, meaning that crewmembers who break the law are fully aware that they will receive no immediate legal consequences.

80. CARNIVAL's duty owed to its passengers, including DOE, is non-delegable and even the slightest negligence renders a carrier liable.

81. CARNIVAL breached its duty to exercise reasonable care under the circumstances in relation warning or informing its passengers, by its actions and conduct, including but not limited to the following:

a. Failing to warn passengers that there are or may be sexual predators amongst CARNIVAL's crewmembers;

b. Failing to warn passengers that the cruise line does not properly investigate, screen, hire or retain crewmembers who have direct contact with passengers, and that the passengers should not trust the crewmembers;

c. Failing to adequately warn passengers aboard CARNIVAL's ships that there are real and significant dangers aboard the vessel, including that other passengers have been sexually assaulted by crewmembers, and by failing to advise passengers that a heightened degree of care should be exercised when dealing with the crewmembers aboard the vessel;

d. Failing to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents;

e. Failing to retain experts to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents;

f. Deliberately creating an environment whereby passengers would be deceived into believing that they are in a safe and friendly "family" environment where it is safe to interact with male crewmembers where, in reality, passengers are at risk of being targeted and attacked by sexual predators;

g. Concealing, suppressing, and mischaracterizing information involving prior incidents where passengers are victimized aboard CARNIVAL's vessels;

h. Protecting CARNIVAL's business interests and media image at the expense of the fundamental rights of the passengers and other members of the public who will be subjected to sexual assaults and batteries and otherwise victimized in the future;

i. Failing to warn passengers, including Plaintiff, that the security systems and personnel onboard ship were not adequate to protect passengers from crewmembers attacking passengers in public areas of the ship;

j. Failing to warn passengers, including Plaintiffs, that there were/are areas on the Carnival VALOR that there are public areas of the subject ship that their children will frequent that are not equipped with surveillance video cameras;

k. Failing to warn passengers including Plaintiffs that subject ship had less video surveillance than other CARNIVAL ships and that therefore Carnival *Valor* was not as safe as other CARNIVAL ships;

l. Failing to warn passengers (including Plaintiffs) of the possibilities and/or dangers of sexual assault aboard the vessel at the hands of crewmembers; and/or;

m. Failure to warn passengers (including Plaintiffs) of the lack of adequate security aboard the Carnival *Valor*;

n. Representing to passengers that there was adequate security aboard the vessel when, in fact, there was inadequate security aboard the vessel in terms of numbers and training; and/or

o. Failing to warn passengers of the prevalence of sexual assaults aboard CARNIVAL's ships;

82. CARNIVAL by its negligent failure to warn, proximately caused and allowed this rape and the injuries and damages suffered by DOE. The injuries and damages suffered by DOE as a result of the negligence of the Defendant include but are not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss

of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiff, JANE DOE, demands judgment against the Defendant CARNIVAL for damages, interest, costs and any further relief to which the Plaintiff is entitled under the applicable law and further demands trial by jury of all issues triable as of right by jury.

**DEMAND FOR JURY TRIAL**

Plaintiff demands jury trial of all issues so triable.

DATED: January 26, 2026.

**lowercase, PLLC**
*Attorneys for Plaintiff*
4443 NW 2nd Avenue
Miami, Fl 33127
Telephone: (833) 569-3335
Facsimile: (305) 508-6349
Email: jarret@lowercaselaw.com
Secondary Email: luisa@lowercaselaw.com

By /s/ Jarret S. McNeill
Jarret S. McNeill, Esq.
Fla. Bar #91852